CENTRAL NEW HAVEN DEVELOPMENT
CORPORATION *v.* LA CREPE, INC.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued December 12, 1978—decision released April 3, 1979

*Peter M. Ryan,* for the appellant (defendant).

*Roger J. Frechette,* for the appellee (plaintiff).

LOISELLE, J.   The plaintiff landlord brought this action for damages for breach of a lease by the defendant tenant.   The issues were found for the plaintiff and damages were awarded.   The defendant has appealed.

The facts in this case were not in serious dispute. On or about December 7, 1966, the plaintiff and defendant entered into a written lease for space in Chapel Square in New Haven for a term of twenty years.   The lease was amended on June 17, 1967, and again on August 24, 1967.

The lease provided: "Landlord agrees to use its best efforts to procure and deliver to Tenant an agreement in writing, from any such present or future ground Lessor and/or any such present or future mortgagee, providing in substance, that so long as Tenant shall faithfully discharge the obligations on its part to be kept and performed under the terms of this lease, its tenancy will not be disturbed nor this lease be affected by any default on the part of the Landlord under any such present or future ground lease or present or future mort-

gage, and/or extensions, modifications, removals, replacements and amendments with respect to such ground lease or mortgage. The instruments thereto shall be delivered by Landlord to Tenant within sixty (60) days after the execution of this Lease and if Landlord fails to deliver such instruments within said period of time, Tenant may cancel this lease." The amendment to the lease on June 17, 1967, changed the last sentence of the above quoted portion of the lease to read: "The instruments thereto shall be delivered by Landlord to Tenant within sixty (60) days after the execution of this Amendment to the Lease and if Landlord fails to deliver such instruments within said period of time, Tenant may cancel this lease."

On May 11, 1970, the defendant wrote to the plaintiff and requested the plaintiff to obtain such a nondisturbance agreement. The plaintiff then contacted the mortgagee who refused to provide it. The defendant vacated the premises September 30, 1970. The leased premises were vacant from September 30, 1970, to June 1, 1971, when they were leased for a rental amount of less than that in the lease between the plaintiff and the defendant.

The trial court interpreted the lease provision as only requiring the plaintiff to use its best efforts to procure the nondisturbance agreement from the mortgagee. It found that the plaintiff did use its best efforts to procure the agreement and that the defendant was in breach, and awarded damages.

"A lease is a contract. *Cohn* v. *Fennelly,* 138 Conn. 474, 476, 86 A.2d 183. In construing it, three elementary principles must be kept constantly in mind: (1) The intention of the parties is controlling and must be gathered from the language of the

lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible. *Perkins* v. *Eagle Lock Co.,* 118 Conn. 658, 663, 174 A. 77." *Ingalls* v. *Roger Smith Hotels Corporation,* 143 Conn. 1, 6, 118 A.2d 463 (1955); *Lonergan* v. *Connecticut Food Store, Inc.,* 168 Conn. 122, 128, 357 A.2d 910 (1975); *Collins* v. *Sears, Roebuck & Co.,* 164 Conn. 369, 373–74, 321 A.2d 444 (1973); *Perruccio* v. *Allen,* 156 Conn. 282, 285, 240 A.2d 912 (1968). The language in the lease in this case and in the provision relating to the obtaining of the agreement in question is plain and unambiguous. Therefore, it is not subject to interpretation or construction. *Collins* v. *Sears, Roebuck & Co.,* supra, 373; 17 Am. Jur. 2d, Contracts § 241. The plain meaning of the provision in question is that within sixty days of the signing of the amendment to the lease on June 17, 1967, the plaintiff was to use its best efforts to procure a subrogation agreement from the mortgagee for the benefit of the defendant lessee and if one was not procured within sixty days of June 17, 1967, then the lessee would have the right to cancel the lease. Therefore, the court was in error in concluding that the defendant did not have the right to cancel its lease as long as the plaintiff did use its best efforts to procure an agreement from the mortgagee that the defendant's lease would not be disturbed by the default of the landlord. On August 16, 1967, the plaintiff had not secured the required agreement so the defendant lessee had the right to cancel the lease.

The lease does not provide any special time within which the lessee must exercise its right to cancel the lease once it has accrued. The defendant claimed that its right would extend for the remainder of the twenty-year lease period, once there was a breach of the condition.

When a lease, or any contract, is silent as to the time when an option to cancel on a contingency must be exercised, it must be exercised at the time the contingency occurs or within a reasonable time thereafter. *Citizens Bank Bldg.* v. *L. & E. Wertheimer, Inc.,* 126 Ark. 38, 189 S.W. 361 (1916); *Alpern* v. *Mayfair Markets,* 118 Cal. App. 2d 541, 258 P.2d 7 (1953); *Pacific Warehouse Co.* v. *McKenzie-Hunt Paper Co.,* 80 Wash. 489, 141 P. 1147 (1914); 49 Am. Jur. 2d, Landlord and Tenant § 1002; annot., 37 A.L.R.2d 1173, 1174. In the instant situation, the option was not exercised until September 30, 1970, more than three years after the failure of the condition upon which the option to cancel was based. Ordinarily, the question of what constitutes a reasonable time to exercise an option to terminate a lease is generally one of fact, but where the facts are not in dispute, it is one of law. *Alpern* v. *Mayfair Markets,* supra; annot., 37 A.L.R.2d 1173, 1174.

It is noteworthy that eight days after the right to cancel had accrued, on August 24, 1967, the defendant not only did not cancel but in fact amended the contract again in a manner unrelated to the cancellation option clause. Further, the defendant waited until May 11, 1970, to request the delivery of the nondisturbance agreement from the then mortgagee. When the plaintiff could not produce one, the defendant vacated the premises on September 30, 1970, claiming the cancellation option was opera-

tive. Such delay is not reasonable as a matter of law and the cancellation was ineffective. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance *and its enforcement.*" (Emphasis added.) Restatement (Second), Contracts § 231 (1973). Cf. *Sylvan Crest Sand & Gravel Co.* v. *United States,* 150 F.2d 642 (2d Cir. 1945), which holds that a clause expressly allowing cancellation "at any time" is not unrestricted, but could only be exercised, with notice, within a reasonable period of time.

Neither party has briefed a waiver argument on appeal to this court. Nor was there any finding as to waiver made by the trial court. A waiver theory, however, was the basis of the trial court's decision. It found that the lessee's failure to insist upon the terms of the lease would not be construed as a waiver to enforce any term based on Article XV (g) of the agreement.[1] The court interpreted this provision of the lease as permitting the defendant to request the nondisturbance agreement as it did in May, 1970. In contrast, we find that the provision that the nondisturbance agreement be obtained was conditioned not upon the defendant's request but upon the expiration of sixty days from the signing of the agreement. This time was set and definite and was not one that continued so that it was capable of being performed at a subsequent time. This was recognized by the parties in June of 1967, when they agreed on the first amendment. The time for performance was then changed to sixty days from

---

[1] Article XV (g) of the agreement provides: "WAIVER. The failure of the Landlord or the Tenant to enforce, or insist upon performance of any of the terms of this lease shall not be construed as a waiver of any other term, or as a waiver of any future right to enforce, or insist upon the performance of, the same term."

June 17, 1967, rather than from December 7, 1966. If the parties had construed the provision of the lease requiring the lessor to obtain a nondisturbance agreement to be a continuing obligation subject to the nonwaiver provision of the lease, there would have been no need to advance the time of performance from June 17, 1967. The nonwaiver provision would not be applicable to the noncontinuing requirement to obtain a nondisturbance agreement as the time for obtaining the same had expired.

Although the court based its opinion on different grounds, which we find erroneous, the ultimate conclusions and the award of damages were not in error. *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978); *Morris* v. *Costa,* 174 Conn. 592, 392 A.2d 468 (1978); *DiMaggio* v. *Cannon,* 165 Conn. 19, 24, 327 A.2d 561 (1973).

There is no error.

In this opinion the other judges concurred.